E-FILED
Thursday, 23 May, 2019  01:23:30 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| ROBERT B. MANSELL, SR., KATHY MANSELL, and KEN MANSELL,      ) <br><br> Plaintiffs,      ) <br>      ) <br> v.      ) <br>      ) <br> MEMORIAL MEDICAL CENTER,      ) <br>      ) <br> Defendant.      ) | Case No.:  19-cv-3130 |

## COMPLAINT

Plaintiffs, Robert B. Mansell, Sr., Kathy Mansell, and Ken Mansell, by their attorneys, Jennifer Sender and Andrés J. Gallegos of Robbins, Salomon & Patt, Ltd., for their Complaint against Defendant Memorial Medical Center ("Memorial," or the "Defendant"), an Illinois not-for-profit corporation, state as follows:

## JURISDICTION AND VENUE

1.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the Plaintiffs' claims alleged herein arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189; Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794, *et seq.*; and Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 U.S.C. § 18116. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

2.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). All of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

**THE PARTIES**

3.      Plaintiff, Robert B. Mansell, Sr. ("Robert"), is an adult and has been profoundly deaf since birth. Robert's primary means of communication is through American Sign Language ("ASL"). Robert has a limited ability to understand written English language, he can read and write only simple sentences in English, he has very limited ability to lip read, and he can articulate only a few basic words in English. He is a person with a disability within the meaning of all applicable statutes. Robert has a history of congestive heart failure and colon cancer and is currently on chemotherapy. Robert resides in Jacksonville, Illinois.

4.      Plaintiff, Kathy Mansell ("Kathy"), is Robert's ex-wife and close friend. Kathy is hearing. She is fluent in ASL, but she is not a licensed interpreter, and has no knowledge of medical terminology or signs for medical terminology. Kathy resides in Jacksonville, Illinois.

5.      Plaintiff, Ken Mansell ("Ken") is Robert's brother. Ken is hearing. He has knowledge of basic sign language to communicate, has no formal training in interpreting, and has no knowledge of medical terminology or signs for medical terminology. Ken resides in Jacksonville, Illinois.

6.      Memorial Medical Center is an Illinois not-for-profit corporation and is a regional acute care medical center located at 701 North 1st Street, Springfield, Illinois, which serves the residents of 40 central and southern Illinois area. Memorial Medical Center is one of seven affiliates of the Memorial Health System.

## **FACTUAL BACKGROUND**

7.     The deaf community struggles with significant health disparities and is often excluded from health surveillances, outreach programs and mass media healthcare messages. Deaf users of ASL, through cultural and language barriers, are at high risk for poor health knowledge and inequitable access to medical care in our health system. These barriers directly translate to inadequate assessment, limited access to treatment, insufficient follow-up and poorer outcomes. For example, as compared with the hearing population, for the deaf population there are lower rates of individuals accessing preventative services, worse cardiovascular health outcomes and higher rates of diabetes and obesity.[1] ASL is the primary language for many people who are deaf; however, interpreters are often not provided during medical visits.

8.     Memorial's denial to plaintiffs of full and equal access to its healthcare services manifests itself in several fundamental ways: (1) failure to provide appropriate auxiliary aids and services, like qualified ASL interpreters and devices, or other means to effectively communicate with patients who are deaf; (2) required family members to interpret for patients who are deaf; (3) inadequate policies and procedures to accommodate a patient's disability; and (4) failure to properly train appropriate staff on the use of video remote interpreting ("VRI") equipment. These violations deprived the plaintiffs of the full and equal access to defendant's services and denied plaintiffs the equal opportunity to participate in Robert's healthcare, in violation of the ADA, the Rehabilitation Act and Section 1557.

9.     Memorial failed to implement policies, practices and procedures that meet its enhanced federal communication access mandate, which if followed would provide plaintiffs an

---

[1] *See* Schoenborn, M.P.H., et al., Health Disparities Among Adults with Hearing Loss: United States, 2000 – 2006, Center for Disease Control and Prevention, Health E-Stats. Available at:
http://www.cdc.gov/nchs/data/hestat/hearing00-06/hearing00-06.htm

equal opportunity to participate in its services and in healthcare services provided to Robert, as required by Section 1557. 45 C.F.R. § 92.202.

10.      Memorial is a public accommodation within the meaning of the ADA, and a covered entity within the meaning of Section 1557.

11.      Memorial participates in one or more Medicare and Medicaid healthcare plans with third-party payers and is a participating provider under Medicare and Medicaid. Approximately 70% of Memorial's inpatients are Medicaid and Medicare recipients; and approximately 50% of its outpatients are Medicaid and Medicare recipients. As a result thereof, Memorial is a recipient of federal financial assistance within the meaning of the Rehabilitation Act and a covered entity under Section 1557.[2]

12.      Memorial failed to provide Robert with auxiliary aids and services to allow him to effectively communicate with Memorial's medical and nursing staff during numerous vital encounters in connection with Robert's hospitalization and testing in November of 2018, which did not allow him to participate in his own care. Further, Memorial improperly relied on Kathy and Ken to facilitate communication between physicians and nurses and Robert during numerous vital encounters in connection with medical services that Robert received at Memorial. By failing to provide auxiliary aids and services, Memorial jeopardized Robert's health and well-being.

13.      On November 24, 2018, at approximately 2:20 a.m., Robert, who has a history of congestive heart failure, and is being treated for colon cancer, anxiety and depression, drove himself to Passavant Hospital in Jacksonville because he was experiencing severe chest pains. After conducting testing, due to his continued complaints, the doctors at Passavant Hospital

---

[2] Illinois Hospital Report Card and Consumer Guide to Healthcare, Illinois Department of Public Health. Available at: http://www.healthcarereportcard.illinois.gov/hospitals/view/101160 (52.5% of all inpatients at Memorial Medical Center are Medicare recipients, and 17.7% of its inpatients are Medicaid recipients; 28.91% of all of its outpatients are Medicare recipients, and 21.08% of its outpatients are Medicaid recipients).

transferred Robert via ambulance to Memorial to be treated by a cardiology specialist. At Passavant Hospital, Robert was provided with an on-site ASL interpreter to assist with communication. Prior to the transfer, Robert asked a doctor at Passavant Hospital to contact Memorial to request an on-site ASL, which was done.

14.     At approximately 6:43 a.m. on November 24, 2018, Robert was transferred to Memorial and remained hospitalized there until his discharge on November 26, 2018.

15.     When Robert arrived at Memorial, there was no on-site ASL. He immediately requested paper and pen and wrote that he needed an interpreter. The nurse brought in VRI equipment, but she apparently did not know how to operate the equipment. The VRI equipment in his examination room remained unused.

16.     Robert's preferred method of communication, ASL, was recorded in his Memorial medical records by a Social Services nurse on November 24, 2018 at approximately 11:03 a.m.

17.     At approximately 9:30 a.m. on November 24, 2018, Kathy arrived at Memorial. She immediately asked the staff if Robert would be provided an on-site interpreter, and she was informed that Memorial does not provide on-site interpreting. Despite the absence of an emergency involving an imminent threat to the safety or welfare of Robert or the public, and despite Robert not requesting that Kathy interpret for him, the staff then asked Kathy to interpret for Robert. Reluctantly, Kathy agreed to interpret, but she stressed to the staff that a licensed, qualified interpreter was needed and that she was not a licensed, qualified interpreter and did not have knowledge of medical terminology or signs for medical terminology.

18.     Robert underwent a series of tests, including a chest x-ray, an electrocardiogram, an echocardiogram, and a Lexiscan nuclear stress test. Kathy was forced to interpret for Robert, as he had no other means to communicate with doctors, nurses and staff during these tests. The test results revealed that Robert had atrial fibrillation with rapid ventricle rate.

19.     Robert was identified as a fall risk and was instructed that he could not get out of his bed by himself.

20.     When Robert returned to his hospital room, Kathy repeatedly informed Memorial's nurses and staff that Robert was deaf and needed an interpreter. Despite these repeated requests, the doctors and nurses continued to talk to Robert without regard to his ability to understand them. In fact, the nurses provided verbal instructions to Robert on the use of the non-deaf friendly call button and non-deaf friendly telephone to order his food. Even though Kathy reminded the nurse that Robert could not use the call button or telephone, the nurse reminded Robert to use them when she left the room.

21.     During the day of November 24th, while Kathy was with Robert, she used the call button for Robert to request assistance with the restroom. Because there was a significant delay in the staff's response to the call, Kathy had to assist Robert in ambulating to the restroom.

22.     That day, Kathy had to leave around 3:00 p.m. Robert had no means to communicate with doctors and nursing staff and no means to use the call button the remainder of that day or night.  Robert's son-in-law called Memorial to advise them that Robert was deaf and needed an interpreter. None was provided.

23.     The next morning, November 25, 2018, Robert's brother, Ken, arrived at the hospital and stayed with him until his discharge on November 26, 2018.  On his arrival, Ken asked Memorial staff regarding the status of the on-site interpreter. He was told that they only had VRI. When the nurses attempted to use the VRI, it still would not work. Because there was no other means for Robert to communicate with the doctors, nurses, and staff, Ken was forced to attempt to interpret. Ken explained to the staff that he only knew the basics of ASL and was not fluent or certified.

24.     On November 25, 2018, Robert underwent a series of tests with the cardiology and other departments, including a two-day nuclear stress test. Ken offered to accompany Robert to assist with communication, but staff told him it was not needed. Upon return from testing, Robert was distressed, upset, and crying, because he had no way to communicate during the tests. Robert was also presented with cardiac education information, covering such topics as action plan for symptoms, activity restrictions, chest pain/emergency management, daily weight, medication pre-administration procedures and other critically vital topics, none of which he was able to understand. That information was provided to him without the benefit of a sign language interpreter.

25.     On the morning of November 26, 2018, Robert underwent additional testing, and the cardiologist came in to speak with Robert. The doctor refused to attempt to utilize the VRI; instead, he spoke at length with Ken regarding the results of the tests and Robert's condition. With his limited knowledge of ASL, Ken tried to communicate to Robert the conversation with the cardiologist.

26.     At approximately 4:30 p.m. on November 26, 2018, Robert was discharged from Memorial. No interpreter was provided for Robert's discharge conference, during which critical information was presented in writing to Robert about his diagnosis, cardiac education, the role of physical and occupational therapy, and importance of a cardiac follow-up upon discharge. Richard did not understand the information presented.   After four days in the hospital and numerous tests, Robert still did not know the cause of his chest pains. The inability to engage in free flow communication, to ask his questions and have them answered, to understand treatment options and plans, to understand preventative steps, and to provide informed consent caused Robert significant emotional distress, humiliation, anxiety and added to his depression.

27.     Robert has health insurance through Health Alliance HMO. Memorial is an in-network hospital under that health insurance plan. Robert intends to return to Memorial for specialist care relating to his congestive heart disease and colon cancer, specialist care that he cannot receive at Passavant Hospital in his hometown of Jacksonville, Illinois. His cardiologist, Dr. Stephen P. Chen, whose office is located across the street from Memorial at 800 North 1st Street in Springfield, Illinois has admitting privileges at Memorial.

## COUNT I

## Robert B. Mansell, Sr. - Violation of the Americans with Disabilities Act, 42 U.S.C. § 12131

1-27.   Plaintiff incorporates by reference paragraphs 1 through 27.

28.     Robert's claims in Count I arise under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 – 12189 (the "ADA"), and its implementing regulations under Title III, applicable to public accommodations, 28 C.F.R. §§ 36.101 – 36.608, which provide in pertinent part as follows:

A.     No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201.

B.     It shall be discriminatory to subject an individual on the basis of a disability or disabilities of such individual, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b) (1)(A)(i); 28 C.F.R. § 36.202(a).

C.     It shall be discriminatory to afford an individual, on the basis of a disability or disabilities of such individual, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

D.     It shall be discriminatory to fail to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b) (2)(A)(ii); 28 C.F.R. § 36.302(a).

E.     The term "public accommodation," as used in the statute, includes hospitals. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.104.

29.     Pursuant to the statutory directive in 42 U.S.C. § 12186(b), the U.S. Department of Justice has promulgated regulations to implement Title III's broad nondiscrimination mandate with respect to covered entities. One of these regulations, titled "Auxiliary aids and services," specifies that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). Although "the ultimate decision as to what measures to take rests with the public accommodation," the public accommodation "should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective

communication." *Id.* § 36.303(c)(1)(ii). The chosen method must "result[] in effective communication." *Id.* Moreover, to "be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id.*

30.     The acts and omissions of defendant Memorial violated and continue to violate the ADA and its implementing regulations in one or more or all of the following manners, as Memorial has discriminated against Robert by:

A.      Denying him the opportunity for the full and equal enjoyment of Memorial's goods, services, facilities, privileges, advantages, or accommodations.

B.      Denying him the opportunity to participate in or benefit from Memorial's goods, services, facilities, privileges, advantages, or accommodations.

C.      Offering or affording him services that are not equal to those services afforded to other individuals who are not deaf.

D.      Failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford Memorial's goods, services and facilities to Robert where such modifications would not fundamentally alter the nature of its goods, services or facilities.

E.      Intentionally failing to provide Robert appropriate auxiliary aids and services to achieve effective communications and to participate in his own healthcare.

F.      Otherwise having discriminated against Robert because of his disability.

31.     As a proximate result of Defendant's violations of the ADA, Memorial has inflicted injury and damages upon Robert, including loss of a civil right, mental anguish, humiliation, and mental pain and suffering.

32.     Memorial's conduct constitutes ongoing and continuing violations of the ADA. Unless restrained from doing so, defendant Memorial will continue to violate the ADA. This conduct, unless enjoined, will continue to inflict injuries on Robert, for which he has no adequate

remedy at law. Therefore, pursuant to section 308 of the ADA (42 U.S.C. § 12188), Robert is entitled to injunctive relief.

33.    Plaintiff is entitled to reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 12205.

WHEREFORE, plaintiff Robert B. Mansell, Sr. prays for the following relief against defendant Memorial Medical Center:

A.    A preliminary injunction and a permanent injunction, prohibiting defendant Memorial from violating the ADA, 42 U.S.C. § 12181, et seq., and compelling defendant to comply with the ADA;

B.    A declaration that Defendant is operating in a manner which discriminates against the Plaintiff and that Defendant fails to provide communication access to the Plaintiff as required by law;

C.    An order enjoining Defendant from discriminating against the Plaintiff, requiring Defendant to (i) adopt and implement a legally compliant communication access policy; (ii) make available to Plaintiff an array of auxiliary aids and services; and (iii) provide its appropriate employees training on its communication access policy, the proper utilization of auxiliary aids and services and interacting with persons who are deaf;

D.    An award of attorneys' fees and costs; and

E.    Such other relief as the Court deems just.

## COUNT II

## Robert B. Mansell, Jr. - Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 704

1-27.    Plaintiff incorporates by reference the paragraphs 1through 27.

28.    At all relevant times herein, Defendant received federal financial assistance in the form of reimbursement from the federal Medicare and Medicaid programs and is therefore subject to the anti-discrimination provisions of the Rehabilitation Act, as herein described.

29.     At all times relevant herein, there was in full force and effect a statute known as the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et sequitur*, and its implementing regulations, 45 C.F.R. § 84.4(a). The Section 504 implementing regulation provides that "[n]o qualified handicapped person shall, on the basis of handicap be excluded from participation in, be denied the benefits of or otherwise be subjected to discrimination under any program or activity which receives or benefits from Federal financial assistance." 45 C.F.R. § 84.4(a).

A.  The regulation further provides:

"A recipient, in providing any aid, benefit, or service, may not, ... on the basis of handicap: (ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit or service that is not equal to that afforded others ..."

45 C.F.R. § 84.4(b)(1) (ii).

B.  Elsewhere, the Section 504 regulation states:

"In providing health, welfare or other social services or benefits, a recipient may not on the basis of handicap: … (2) Afford a qualified handicapped person an opportunity to receive benefits or services that is not equal to that offered non-handicapped persons.

45 C.F.R. § 84.52(a)(2).

C.   In addition, "[a] recipient hospital that provides health services or benefits shall establish a procedure for effective communication with persons with impaired hearing for the purpose of providing emergency health care." 45 C.F.R.  § 84.52(c).

D.  The regulation further provides:

"A recipient to which the subject applies that employs 15 or more persons shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question."

45 C.F.R. § 84.52(d)(l).

E.  The regulation provides that such "auxiliary aids may include interpreters… and other aids for persons with impaired hearing… 45 C.F.R. § 84.52(d)(3).

F.  The Section 504 regulation defines a person who has a disability as any person who:

"(i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."

45 C.F.R. § 84.3(j)(l)(i)-(iii).

G.  A qualified person with a disability, with respect to the provision of health, welfare and social services, is a person "who meets the essential eligibility requirements for the receipt of such services." 45 C.F.R. § 84.3(k)(4).

30.     Through the acts and omissions alleged herein, Memorial has, solely on the basis of Plaintiff's disability, excluded Plaintiff from participating in its services, denied Plaintiff the benefit of its services, denied Plaintiff the opportunity to participate in his healthcare, and subjected Plaintiff to discrimination in violation of 29 U.S.C. § 794. *et seq*., and the regulations promulgated thereunder, and have resulted in injury to Plaintiff.

31.     At all relevant times herein, Memorial knew that Plaintiff had federally protected rights to effective communication, and Defendant's acts and omissions alleged herein violated and continued to violate the Rehabilitation Act and its implementing regulations by one or more or all of the following manners as defendant has discriminated against Robert by:

A.      Denying him the opportunity for the full and equal enjoyment of the services, privileges, advantages, or accommodations of the facilities owned, operated and/or contracted for use by Defendant.

B.      Denying him the opportunity to participate in or benefit from the services, facilities, privileges, advantages, or accommodations of Defendant's facilities.

13

C.     Offering or affording him services that are not equal to those services afforded to other individuals without hearing impairments.

D.     Failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford its services to Robert where such modifications would not fundamentally alter the nature of its services.

E.     Failing to establish a procedure for effective communication with Robert for the purpose of providing health care.

F.     Acting intentionally and with deliberate indifference in failing to provide Robert appropriate auxiliary aids and services, such as an on-site sign language interpreter or effective video remote interpreting services, where the taking of such steps would not fundamentally alter the nature of its offered services or would not result in undue burden.

G.     Defendant has otherwise discriminated against Robert.

32.     Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

33.     As a proximate result of Defendant's violations of Section 504, Memorial has inflicted injury and damages upon the Plaintiff, including loss of a civil right, mental anguish, humiliation, and mental pain and suffering.

34.     Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794(a), as Defendant's conduct has inflicted injury and damages upon Plaintiff, including loss of a civil right, mental anguish, and mental pain and suffering.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert B. Mansell, Sr. prays for the following relief:

A.      An order enjoining Defendant from discriminating against the Plaintiff, requiring Defendant to (i) adopt and implement a legally compliant communication access policy; (ii) make available to Plaintiff an array of auxiliary aids and services; and (iii) provide its appropriate employees training on its communication access policy, the proper utilization of auxiliary aids and services and interacting with persons who are deaf;

B.      A declaration that Defendant is operating in a manner which discriminates against the Plaintiff and that Defendant fails to provide communication access to the Plaintiff as required by law;

C.      An award of compensatory monetary damages;

D.      An award of attorneys' fees and costs; and

E.      Such other relief as the Court deems just.

## COUNT III

### Robert B. Mansell, Jr. - Violation of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116

1-27.   Plaintiff incorporates by reference paragraphs 1through 27.

28.      Since March 2010, there was in full force and effect a statute known as the Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, *et seq.,* Pulp. 111-148. Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective as of July 18, 2016, apply to health programs or activities administered by recipients of Federal financial assistance from the Department of Health and Human Services.

29.      As Defendant participates in Medicare and Medicaid, it is a covered entity subject to compliance with Section 1557.

30.     The implementing regulations of Section 1557 prohibit discrimination of an individual on the basis of disability, *inter alia*, and prohibit an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. *See* 45 C.F.R. § 92.101(a)(1). Those regulations, in pertinent part, require covered entities to:

A.     Take appropriate initial and continuing steps to notify beneficiaries, enrollees, applicants and members of the public:

    (1)     that the covered entity does not discriminate on the basis of race, color, national origin, sex, age, or disability in its healthcare programs or activities. 45 C.F.R. §92.8 (a)(1);

    (2)     that the covered entity provides appropriate auxiliary aids and services, including qualified interpreters for individuals with disabilities and information in alternate formats, free of charge and in a timely manner, when such aids and services are necessary to ensure an equal opportunity to participate to individuals with disabilities. 45 C.F.R. §92.8 (a)(2);

    (3)     how to obtain aids and services. 45 C.F.R. §92.8 (a)(4);

    (4)     the identification of, and contact information for, the responsible employee designated to be responsible for adoption of grievance procedures. 45 C.F.R. §92.8 (a)(5);

    (5)     the availability of grievance procedures and how to file a grievance pursuant to §92.7(b). 45 C.F.R. §92.8 (a)(6); and

    (6)     how to file a discrimination complaint with the Department of Health and Human Services Office of Civil Rights. 45 C.F.R. §92.8 (a)(7).

B.     That a covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in accordance with the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

28 C.F.R. §§ 35.160 through 35.164 are the communication access standards required of public entities under Title II of the ADA. Where those regulatory provisions use the term "public entity," the term "covered entity" shall apply in its place. *See* 45 C.F.R. § 92.202(a). As applied

to Section 1557 covered entities, the Title II regulations require them to "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). In addition, a covered entity "shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, … companions, … an equal opportunity to participate in, and enjoy the benefits of, a service, program or activity of a [covered] entity," 28 C.F.R. § 35.160(b)(1); and "[i]n determining what types of auxiliary aids and services are necessary, a [covered] entity shall give *primary consideration* to the requests of individuals with disabilities …." 28 C.F.R. § 35.160(b)(2) (emphasis added).

31.     Defendant had a duty under Section 1557 to give primary consideration to Plaintiff's communication preference and provide them with an ASL interpreter, either on-site or via effective VRI.

32.     Defendant's acts and omissions violated Section 1557 and its implementing regulations as Defendant did not take appropriate steps to ensure that communications with Plaintiff were as effective as communications with others in its healthcare services, and Defendant failed to meet its obligations under Section 1557 and the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

33.     Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by this part, and "compensatory damages for violations of Section 1557 are available in appropriate administrative and judicial actions brought under this rule." *See* 45 C.F.R. § 92.301.

34.     Defendant's conduct constituted violations of Section 1557.

35.     Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

36.     Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert B. Mansell, Sr. prays for the following relief:

A.     An order enjoining Defendant from discriminating against the Plaintiff, requiring Defendant to (i) adopt and implement a legally compliant communication access policy; (ii) make available to Plaintiff an array of auxiliary aids and services; and (iii) provide its appropriate employees training on its communication access policy, the proper utilization of auxiliary aids and services and interacting with persons who are deaf;

B.     A declaration that Defendant is operating in a manner which discriminates against the Plaintiff and that Defendant fails to provide communication access to the Plaintiff as required by law;

C.     An award of compensatory monetary damages;

D.     An award of attorneys' fees and costs; and

E.     Such other relief as the Court deems just.

## COUNT IV

## Kathy Mansell - Violation of the Rehabilitation Act, 29 U.S.C. § 704

1 - 27.     Plaintiff incorporates by reference paragraphs 1 through 27.

28.     Plaintiff's claims in Count IV arise under the Rehabilitation Act, 29 U.S.C. § 701 *et sequitur*, Public Law 93-112, 87 Stat. 355, as amended, and its implementing regulations, 45 C.F.R. § 84.4(a), which provide in pertinent part that "[A]ny person aggrieved by any act or failure to act by any recipient of Federal assistance" under the Rehabilitation Act may bring suit. 29 U.S.C. § 794a(a)(2). This includes the non-disabled. In fact, "the use of such broad language in the enforcement provisions of the Rehabilitation Act evinces a congressional intention to define standing to bring a private action under the Rehabilitation Act . . . as broadly as is permitted by Article III of the Constitution." *Innovative Health Sys., Inc. v. City of White Plains,*117 F.3d 37, 47 (internal quotation marks omitted). The standing provision of the Rehabilitation Act, § 794a(a)(2), is distinct from the provision prohibiting discriminatory conduct on the part of the recipient of federal assistance, § 794(a). Therefore, the type of injury a "person aggrieved" suffers need not be "exclu[sion] from the participation in, ... deni[al of] the benefits of, or ... subject[ion] to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

29.     Memorial receives federal financial assistance in the form of reimbursement from the Medicare and Medicaid programs and is therefore subject to the antidiscrimination provisions of the Rehabilitation Act, as herein described.

30.     Plaintiff remained with Robert to interpret for him while he underwent testing on November 24, 2018 and throughout the day. Without the existence of an emergency involving an imminent threat to the safety or welfare of Robert or the public, and without Robert requesting that Kathy interpret for him, she was forced to interpret for Robert during many vital encounters with his doctors and nurses even though she informed Memorial's staff that her knowledge of ASL was limited. She feared leaving Robert's presence, because there were no means provided

to Robert by defendant to communicate effectively with Memorial's doctors, nurses and other staff.

31.     As Robert's ex-wife and friend, Kathy was under significant stress as Robert underwent testing for his heart condition, which was exacerbated by bearing responsibility for attempting to interpret for Robert knowing she could not interpret with any meaningful degree of accuracy and was asked to interpret medical terminology beyond her comprehension.

32.     At all relevant times herein, Memorial knew that Plaintiff had federally protected rights to effective communication, and Defendant's acts and omissions alleged herein violated and continue to violate the Rehabilitation Act and its implementing regulations in one or more or all of the following manners as defendant has discriminated against Plaintiff by:

A.     Denying her the opportunity for the full and equal enjoyment of Memorial's goods, services, facilities, privileges, advantages, or accommodations.

B.     Denying her the opportunity to participate in or benefit from Memorial's goods, services, facilities, privileges, advantages, or accommodations.

C.     Offering or affording her services that are not equal to those services afforded to other individuals who are companions to patients who are not deaf.

D.     Failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford Memorial's goods, services and facilities to Plaintiff where such modifications would not fundamentally alter the nature of its goods, services or facilities.

E.     Intentionally requiring Plaintiff to interpret for Robert, when Defendant knew that Plaintiff was a family member and not a licensed interpreter, and Robert did not request that Defendant use Plaintiff.

F.     Otherwise having discriminated against Plaintiff because of her relationship with a person with a disability.

33.     As a direct and proximate result of the foregoing, Plaintiff suffered the loss of a civil right and suffered great mental anguish, and she was otherwise injured and damaged.

34.     Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d), *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

35.     Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

WHEREFORE, Plaintiff Kathy Mansell prays for the following relief:

      A.     An award of compensatory monetary damages;

      B.     An award of attorneys' fees and costs; and

      C.     Such other relief as the Court deems just.

## COUNT V

## Ken Mansell - Violation of the Rehabilitation Act, 29 U.S.C. § 704

1 - 27.    Plaintiff incorporates by reference paragraphs 1through 27.

28.     Plaintiff's claims in Count V arise under the Rehabilitation Act, 29 U.S.C. § 701 *et sequitur*, Public Law 93-112, 87 Stat. 355, as amended, and its implementing regulations, 45 C.F.R. § 84.4(a), which provide in pertinent part that"[A]ny person aggrieved by any act or failure to act by any recipient of Federal assistance" under the Rehabilitation Act may bring suit. 29 U.S.C. § 794a(a)(2). This includes the non-disabled. In fact, "the use of such broad language in the enforcement provisions of the Rehabilitation Act evinces a congressional intention to define standing to bring a private action under the Rehabilitation Act . . . as broadly as is permitted by Article III of the Constitution." *Innovative Health Sys., Inc. v. City of White Plains,*117 F.3d 37, 47 (internal quotation marks omitted). The standing provision of the

21

Rehabilitation Act, § 794a(a)(2), is distinct from the provision prohibiting discriminatory conduct on the part of the recipient of federal assistance, § 794(a). Therefore, the type of injury a "person aggrieved" suffers need not be "exclu[sion] from the participation in, ... deni[al of] the benefits of, or ... subject[ion] to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

29.    Memorial receives federal financial assistance in the form of reimbursement from the Medicare and Medicaid programs and is therefore subject to the antidiscrimination provisions of the Rehabilitation Act, as herein described.

30.    Plaintiff remained with Robert to interpret for him during his hospitalization from November 25th and overnight until Robert's discharge on November 26th. Without the existence of an emergency involving an imminent threat to the safety or welfare of Robert or the public, and without Robert requesting that Ken interpret for him, Ken was forced to interpret for Robert during many vital encounters with his doctors and nurses, including a lengthy meeting with the cardiologist and for the discharge meeting, even though he informed Memorial's staff that his knowledge of ASL was limited. He feared leaving Robert's presence, because there were no means provided to Robert by defendant to communicate effectively with Memorial's doctors, nurses and other staff.

31.    As Robert's brother, Ken was under significant stress as Robert underwent testing for his heart condition, which was exacerbated by bearing responsibility for attempting to interpret for Robert knowing he could not interpret with any meaningful degree of accuracy and was asked to interpret medical terminology beyond his comprehension.

32.     At all relevant times herein, Memorial knew that Plaintiff had federally protected rights to effective communication, and Defendant's acts and omissions alleged herein violated and continue to violate the Rehabilitation Act and its implementing regulations in one or more or all of the following manners as defendant has discriminated against Plaintiff by:

A.      Denying him the opportunity for the full and equal enjoyment of Memorial's goods, services, facilities, privileges, advantages, or accommodations.

B.      Denying him the opportunity to participate in or benefit from Memorial's goods, services, facilities, privileges, advantages, or accommodations.

C.      Offering or affording him services that are not equal to those services afforded to other individuals who are companions to patients who are not deaf.

D.      Failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford Memorial's goods, services and facilities to Plaintiff where such modifications would not fundamentally alter the nature of its goods, services or facilities.

E.      Intentionally requiring Plaintiff to interpret for Robert, when Defendant knew that Plaintiff was a family member and not a licensed interpreter, and Robert did not request that Defendant use Plaintiff.

F.      Otherwise having discriminated against Plaintiff because of her relationship with a person with a disability.

33.     As a direct and proximate result of the foregoing, Plaintiff suffered the loss of a civil right and suffered great mental anguish, and she was otherwise injured and damaged.

34.     Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d), *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

35.     Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

WHEREFORE, Plaintiff Ken Mansell prays for the following relief:

A.    An award of compensatory monetary damages;

B.    An award of attorneys' fees and costs; and

C.    Such other relief as the Court deems just.

**Plaintiffs Demand Trial by Jury.**

Dated:  May 23, 2019                    Robert B. Mansell, Sr., Kathy Mansell, and Ken Mansell, Plaintiffs.


                                         /s/ Jennifer M. Sender
                                        _____

                                        One of Their Attorneys

Jennifer M. Sender (ARDC No. 6207774)
Andrés J. Gallegos (ARDC No. 6212168)
Attorneys for Plaintiffs
ROBBINS, SALOMON & PATT, LTD.
180 N. LaSalle Street, Suite 3300
Chicago, Illinois 60601
(312) 782-9000 - Telephone
(312) 782-6690 - Facsimile
jsender@rsplaw.com
agallegos@rsplaw.com