**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| ROBERT B. MANSELL, Sr., | ) | |
| KATHY MANSELL, and | ) | |
| KEN MANSELL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 19-cv-3130 |
| | ) | |
| MEMORIAL MEDICAL CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION</u>

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendant Memorial Medical Center's (Memorial) Motion to Dismiss Counts IV and V of Plaintiffs' Complaint (d/e 6) (Motion). The parties have consented to proceed before this Court. <u>Consent to the Exercise of Jurisdiction by a United States Magistrate Judge entered August 12, 2019 (d/e 12).</u> Memorial moves to dismiss the claims of Plaintiffs Kathy Mansell and Ken Mansell for failure to state a claim and for lack of statutory standing. For the reasons set forth below, the Motion is GRANTED.

<u>STATEMENT OF FACTS</u>

For purposes of the Motion, the Court assumes that all well-pleaded factual allegations in the Complaint are true and draws all inference in favor of the Plaintiffs. <u>See</u> <u>Brooks v. Ross</u>, 578 F.3d 574, 581 (7th Cir. 2009).

Plaintiff Robert Mansell, Sr. (Robert Mansell) is deaf. Robert Mansell is fluent in American Sign Language (ASL). Robert Mansell has limited ability to read and write English; he has a very limited ability to lip read, and he can articulate a few basic words in English. Plaintiffs Kathy Mansell and Ken Mansell are not deaf. Kathy Mansell is Robert Mansell's ex-wife and friend. Ken Mansell is Robert Mansell's brother. Kathy Mansell is fluent in ASL. Ken Mansell has some ability to communicate in ASL but has no formal training. Kathy Mansell and Ken Mansell have no knowledge of medical terminology or ASL signs for medical terminology. <u>Complaint</u>, ¶¶ 3-5.

The Plaintiffs live in Jacksonville, Illinois. On Saturday, November 24, 2018, at 2:20 a.m., Robert Mansell drove himself to the emergency room at Passavant Hospital (Passavant) in Jacksonville, Illinois, because he had chest pains. Robert Mansell had a history of congestive heart failure, colon cancer, anxiety, and depression. Passavant had an ASL interpreter on-site to interpret for Robert Mansell and the doctors. The

doctors at Passavant transferred Robert Mansell to Memorial in Springfield, Illinois, by ambulance. The Court takes judicial notice that Passavant is approximately 40 miles from Memorial by motor vehicle. At Robert Mansell's request, a doctor at Passavant contacted Memorial's staff to request an on-site ASL interpreter to be present at Memorial when Robert Mansell arrived. Complaint, ¶ 13.

On Saturday, November 24, 2018, at approximately 6:43 a.m., Robert Mansell arrived at Memorial. He remained at Memorial until he was discharged on Monday, November 26, 2018. When Robert Mansell arrived, no ASL interpreter was present. He wrote a note asking for an ASL interpreter. The nurse brought Video Remote Interpreting (VRI) equipment to the examination room instead. The nurse did use the VRI equipment in his room. The nurse may have not known how to use the VRI equipment or the equipment may have not functioned properly. See Complaint, ¶¶ 15, 23.

On Saturday, November 24, 2018, at approximately 9:30 a.m., Kathy Mansell arrived at Memorial. Kathy Mansell asked if Robert Mansell would be provided with an on-site ASL interpreter. She was told that Memorial did not provide on-site ASL interpreting. Robert Mansell was not in an emergency involving an imminent threat and did not ask for Kathy Mansell

to interpret. The staff asked Kathy Mansell to interpret. She reluctantly agreed. Kathy Mansell told Memorial staff that she was not a licensed, qualified interpreter and did not know medical terminology. Complaint, ¶ 17. On November 24, 2018, at 11:03 a.m., the Memorial Social Services nurse recorded that Robert Mansell's preferred method of communication was ASL. Complaint, ¶ 16.

Robert Mansell underwent a series of tests at Memorial. Kathy Mansell interpreted for Robert Mansell because he had no other means to communicate with Memorial doctors and staff. The tests showed that Robert Mansell had atrial fibrillation with a rapid ventricle rate. Complaint, ¶ 18.

Robert Mansell was also identified as a fall risk and ordered not to get out of bed. During the day on November 24, 2018, Kathy Mansell used the call button to ask for assistance for Robert Mansell to get out of bed and walk to the restroom. Robert Mansell had no other means to communicate this request. Memorial staff delayed responding, so Kathy Mansell helped Robert Mansell to the bathroom. Complaint, ¶ 21.

Kathy Mansell left Memorial at approximately 3:00 p.m. on Saturday, November 24, 2018. Robert Mansell had no interpreter to assist him in communicating with Memorial doctors and staff for the rest of the day or

overnight.  Robert Mansell's son-in-law called to request an interpreter.  None was provided.  <u>Complaint</u>, ¶ 22.

On Sunday morning November 25, 2018, Plaintiff Ken Mansell came to see his brother Robert Mansell at Memorial.  Ken stayed until Robert Mansell was discharged on Monday November 26, 2018.  Ken Mansell asked about an on-site ASL interpreter.  Memorial staff told Ken Mansell that Memorial used VRI interpretation.  The VRI equipment, however, was not functioning properly.  Ken Mansell alleges that he was forced to interpret for Robert Mansell.  Ken Mansell told staff that he only knew the basics of ASL and was not fluent and was not certified as an ASL interpreter.  <u>Complaint</u>, ¶ 23.

On November 25, 2018, Memorial staff ran tests on Robert Mansell without the presence of Ken Mansell or any other person who could interpret.  On Monday, November 26, 2018, a cardiologist from Memorial refused to use the VRI equipment to communicate with Robert Mansell.  The cardiologist spoke to Ken Mansell about Robert Mansell's condition.  On November 26, 2018 at approximately 4:30 p.m., Robert Mansell was discharged from Memorial.  Robert Mansell received written information about his diagnosis, treatment, and recommended follow-up.  He did not understand the written information.  <u>Complaint</u>, ¶¶ 24-25.

Robert Mansell alleges that he intends to return to Memorial for follow-up care because Passavant cannot provide the type of needed care and because his cardiologist is located in Springfield. Complaint, ¶ 27.

Based on these allegations, Robert Mansell brings claims against Memorial for injunctive relief and damages for violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12189; the Rehabilitation Act (RA), 29 U.S.C. § 704; and the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116. Complaint, Counts I-III.

Kathy Mansell and Ken Mansell each brings a claim for damages against Memorial for violation of the RA, 29 U.S.C. § 704 (Counts IV and V). Kathy Mansell alleges the following violations of her rights under the RA:

32. At all relevant times herein, Memorial knew that Plaintiff had federally protected rights to effective communication, and Defendant's acts and omissions alleged herein violated and continue to violate the Rehabilitation Act and its implementing regulations in one or more or all of the following manners as defendant has discriminated against Plaintiff by:

A. Denying her the opportunity for the full and equal enjoyment of Memorial's goods, services, facilities, privileges, advantages, or accommodations.

B. Denying her the opportunity to participate in or benefit from Memorial's goods, services, facilities, privileges, advantages, or accommodations.

C. Offering or affording her services that are not equal to those services afforded to other individuals who are companions to patients who are not deaf.

D. Failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford Memorial's goods, services and facilities to Plaintiff where such modifications would not fundamentally alter the nature of its goods, services or facilities.

E. Intentionally requiring Plaintiff to interpret for Robert, when Defendant knew that Plaintiff was a family member and not a licensed interpreter, and Robert did not request that Defendant use Plaintiff.

F. Otherwise having discriminated against Plaintiff because of her relationship with a person with a disability.

<u>Complaint</u>, Count IV ¶ 32. Ken Mansell alleges the following violations of

his rights under the RA:

32. At all relevant times herein, Memorial knew that Plaintiff had federally protected rights to effective communication, and Defendant's acts and omissions alleged herein violated and continue to violate the Rehabilitation Act and its implementing regulations in one or more or all of the following manners as defendant has discriminated against Plaintiff by:

A. Denying him the opportunity for the full and equal enjoyment of Memorial's goods, services, facilities, privileges, advantages, or accommodations.

B. Denying him the opportunity to participate in or benefit from Memorial's goods, services, facilities, privileges, advantages, or accommodations.

C. Offering or affording him services that are not equal to those services afforded to other individuals who are companions to patients who are not deaf.

D.   Failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford Memorial's goods, services and facilities to Plaintiff where such modifications would not fundamentally alter the nature of its goods, services or facilities.

E.   Intentionally requiring Plaintiff to interpret for Robert, when Defendant knew that Plaintiff was a family member and not a licensed interpreter, and Robert did not request that Defendant use Plaintiff.

F.   Otherwise having discriminated against Plaintiff because of his relationship with a person with a disability.

Complaint, Count V ¶ 32.  Kathy Mansell and Ken Mansell seek compensatory damages, costs, and attorney fees.  Memorial moves to dismiss Kathy Mansell and Ken Mansell's claims, Counts IV and V of the Complaint.

ANALYSIS

Memorial moves to dismiss Counts IV and V for failure to state a claim.  Fed. R. Civ. P. 12(b)(6).  The Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief," and allegations must be "simple, concise, and direct."  Fed. R. Civ. P. 8(a)(2).  While a complaint need not contain detailed, specific factual allegations, it must contain sufficient facts to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible if the plaintiff "pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is plausible on its face if it provides the defendant fair notice of what the claim is and the grounds upon which it rests, "[T]he plaintiff must give enough details about the subject matter of the case to present a story that holds together." Swanson v. Citi Bank, N.A., 614 F.3d 400, 404 (7th Cir. 2010); see George v. Smith, 507 F.3d 605, 608 (7th Cir. 2007). Dismissal under Rule 12(b)(6) is appropriate when "the factual detail in a complaint [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." Airborne Beepers & Video, Inc. v. AT & T Mobility, LLC, 499 F.3d 663, 667 (7th Cir. 2007).

Memorial also argues that Kathy Mansell and Ken Mansell lack statutory standing. The term statutory standing refers to whether Kathy Mansell and Ken Mansell "fall within the class of plaintiffs whom Congress has authorized to sue" under the RA. Lexmark Intern., Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 n.4 (2014). This Court must determine whether Congress authorizes the claim Kathy Mansell and Ken Mansell have alleged:

> That question requires us to determine the meaning of the congressionally enacted provision creating a cause of action. In

doing so, we apply traditional principles of statutory interpretation. We do not ask whether in our judgment Congress *should* have authorized [the plaintiff's] suit, but whether Congress in fact did so.

Lexmark Int'l, Inc., 572 U.S. at 128 (emphasis in the original).

Kathy Mansell and Ken Mansell allege claims for violations of the RA. The RA and the ADA are interpreted together so that a violation of the ADA constitutes a violation of the RA. See Jaros v. Illinois Department of Corrections, 684 F.3d 667, 671-72 (7th Cir. 2012). The ADA prohibits discrimination against a qualified person with a disability, and also discrimination against a person associated with a disabled person. The ADA states:

> **(a) General rule**
>
> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The ADA then defines discrimination to include discrimination against a person because the person is associated with a disabled person:

> **(E) Association**
>
> It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages,

accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

42 U.S.C. § 12182(b)(1)(E).

The RA prohibits discrimination based on disabilities by federal agencies and entities receiving federal funds:

No otherwise qualified individual with a disability in the United States, . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). Memorial receives federal funds and so is subject to this section of the RA. Section 794a(a)(2) of the RA states that a "person aggrieved" by a violation of RA may seek remedies available under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. 29 U.S.C. § 794a(a)(2).

The ADA, and so the RA, prohibit denying goods, services, facilities, privileges, advantages, accommodations, or other opportunities (collectively "goods and services") to individuals because the individuals are associated with a disabled person. To state a claim, Kathy Mansell and Ken Mansell must each allege that Memorial denied them goods or services because they were associated with Robert Mansell. McCullum v.

Orlando Regional Healthcare Systems, Inc., 768 F.3d 1135, 1144 (11th Cir. 2014).

Kathy Mansell and Ken Mansell fail to allege that either of them sought anything for themselves from Memorial.  Neither asked to be a patient or to use any aspect of the goods and services that Memorial offers to individuals seeking the services of a hospital.  They both wanted Memorial to provide on-site ASL interpreters for Robert Mansell, a disabled deaf person.  The services they sought were services for Robert Mansell, not for themselves.  Neither was denied goods, services, facilities, privileges, advantages, or accommodations by Memorial.  Neither states a claim for damages under the RA § 794(a) and ADA §12182(b)(1)(E). McCullum, 768 F.3d at 1142.

Kathy Mansell and Ken Mansell argue that the RA § 794a(a)(2), not just § 794(a), authorizes claims against Memorial.  Section 794a(a)(2) is the section that authorizes "a person aggrieved" to bring an action for the violation.  They urge the Court to follow the holding in the Second Circuit decision in Loeffler v. Staten Island University Hosp., 582 F.3d 268 (2<sup>d</sup> Cir. 2009).  The Loeffler Court held § 794a(a)(2)'s language that authorized "a person aggrieved" to bring an action meant that a person who can show an injury traceable to a violation of a disabled person's rights under the RA

can bring a claim.  Loeffler, 582 F.3d at 280.  The facts in  Loeffler are somewhat similar to this case.  A deaf person was a patient in a defendant hospital.  Like Kathy Mansell and Ken Mansell here, the deaf patient's family members were required to interpret for him; specifically, his minor children were required to interpret for him for several days.  The children missed school to act as interpreters for their father.  The Loeffler Court found that the ADA and RA should be read broadly to cover this type of associational claim.  The Loeffler Court held that the "person aggrieved" language in § 794a(a)(2) gave a remedy to anyone who was injured by any violation of a disabled person's rights under the RA.  The hospital violated the father's rights to communication and the children alleged an injury from that violation.  The Loeffler Court held that the children, therefore, were persons aggrieved by the violation of the RA and entitled to sue under § 794a.  Loeffler, 582 F.3d at 280-82.

Kathy Mansell and Ken Mansell argue, similarly, that Memorial allegedly violated Robert Mansell's rights by not providing a certified ASL interpreter and they suffered injuries because of that violation.  They allege that they were forced to interpret for Robert just as the children in Loeffler were forced to interpret for their father.  Kathy Mansell and Ken Mansell

argue that, under <u>Loeffler</u>, they are persons aggrieved who can bring actions under § 794a(a)(2).  <u>See</u> <u>Loeffler</u>, 582 F.3d at 280-82.

The <u>McCullum</u> Court disagreed with <u>Loeffler</u> Court's interpretation of the "person aggrieved" language in § 794a.  The <u>McCullum</u> Court explained that § 794a had to be read in context of the entire RA, specifically § 794(a)(2).  The <u>McCullum</u> Court stated that RA § 794(a)(2) "shows that the RA was meant to ensure that '[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be <u>excluded from the participation</u> in, be denied benefits of, or be <u>subjected to discrimination</u> under any program or activity' covered by the statute." <u>McCullum</u>, 768 F.3d at 1143 (emphasis in the original).  The <u>McCullum</u> Court explained that the "proscribed conduct is what the statute makes unlawful."  <u>Id.</u>  The <u>McCullum</u> Court concluded that "a party is 'aggrieved' within the meaning of § 794a(a)(2) only if she suffers injury because she was subjected to one of those types of conduct," either she was excluded from participation in a program or she was subjected to discrimination under any program.  <u>McCullum</u>, 768 F.3d at 1143.

The Court has carefully considered both the <u>Loeffler</u> decision and the <u>McCullum</u> decision.  The Seventh Circuit has not spoken on this issue.  The Court concludes that the <u>McCullum</u> decision is correct.  Section § 794

of the RA grants substantive rights to disabled persons.  Section 12182 of the ADA provides that the prohibited discrimination includes denying "goods, services, facilities, privileges, advantages, accommodations, or other opportunities" to an associate of a disabled person because of his or her association with a disabled person.  42 U.S.C. § 12182(b)(1)(E).  This section of the ADA defines the substantive protections and obligations in the relationship between covered facilities and disabled persons.  The Court agrees with the McCullum Court that the "person aggrieved" language in § 794a(a)(2) refers to individuals whose substantive protections as set forth above have been violated.  The Court declines to follow the decision in Loeffler.

Courts outside the Second Circuit have also consistently agreed with the McCullum decision.  See  Souders v. School District of Philadelphia, 2018 WL 5117196, at *3-4 (E.D. Pa. October 19, 2018); Arce v. Louisiana, 2017 WL 5619376, at *14-16 (E.D. La. November 21, 2018); Labouliere v. Our Lady of Lake Foundation, 2017 WL 4365989, at *5-6 (M.D. La. September 29, 2017); Burton v. Cleveland Heights-University Heights City School District Board of Education, 2017 WL 4348915, at *4 (N.D. Ohio September 29, 2017); Moore v. Equity Residential Management, L.L.C., 2017 WL 2670257, at *4 (N.D. Cal. June 21, 2017); Tveter v. Derry

Cooperative School District SAU # 10, 2017 WL 2062944, at *6 (D.N.H. April 25, 2017); Bernius v. Ochsner Medical Center-North Shore, 2016 WL 10586188, at *4-5 (E.D. La. December 15, 2016); see also Durand v. Fairview Health Services, 902 F.3d 836, 844 (8th Cir. 2018) (Eighth Circuit did not address the issue because plaintiff lacked statutory standing under either Loeffler or McCullum); R.S. by R.D. v. Butler County. Pennsylvania, 700 Fed. Appx. 105, 109 n.19 (3d Cir. 2017) (unpublished decision that McCullum with approval).

As explained above, Memorial did not deny Kathy Mansell nor Ken Mansell any "goods, services, facilities, privileges, advantages, accommodations, or other opportunities" that Memorial offers to the public. The only person that Memorial allegedly discriminated against was Robert Mansell. Kathy Mansell and Ken Mansell, therefore, are not "persons aggrieved" and are not authorized by either the ADA or the RA to bring this action. McCullum, 768 F.3d at 1143.

Kathy Mansell and Ken Mansell argue that the McCullum decision is distinguishable because the decision was made at summary judgment and this case is at the motion to dismiss phase. Kathy Mansell and Ken Mansell also argue the events underlying the alleged claims in McCullum

occurred before the ADA regulations were amended in 2010.  They argue that the 2010 amendments to the regulations gave them substantive rights.

Kathy Mansell and Ken Mansell are incorrect about the procedural posture of the <u>McCullum</u> case.  The alleged claims of the non-disabled associates of the disabled person in <u>McCullum</u> were dismissed on a motion to dismiss and not at summary judgment.  <u>McCullum</u>, 768 F.3d at 1137.

Kathy Mansell and Ken Mansell are also incorrect about the impact of the 2010 amendments to the ADA regulations.  The amendments do not change the outcome of this case.  Kathy Mansell and Ken Mansell rely on the amended version of 28 C.F.R. § 36.303.  This amended section addresses services to a disabled person by a public accommodation.  Memorial is a public accommodation.  28 C.F.R. § 36.104 <u>Definitions</u>.  Subsection (a) states the general rule set forth in the amended § 36.303:

> (a) General. A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, . . . .

28 C.F.R. § 36.303(a).  The remainder of § 36.303 addresses particular aspects of auxiliary aids and services that public accommodations may be required to ensure that no discrimination will result.  Subsection (c) addresses effective communication:

(c) Effective communication.

(1) A public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. This includes an obligation to provide effective communication to companions who are individuals with disabilities.

. . . .

(3) A public accommodation shall not rely on an adult accompanying an individual with a disability to interpret or facilitate communication, except—

(i) in an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available; or

(ii) where the individual with a disability specifically requests that the accompanying adult interpret or facilitate communication, the accompanying adult agrees to provide such assistance, and reliance on that adult for such assistance is appropriate under the circumstances.

. . . .

28 C.F.R. § 36.303(c)(1) and (c)(3).

Kathy Mansell and Ken Mansell argue that §36.303(c)(3) prohibited Memorial from allegedly forcing them to interpret for Robert Mansell.  They argue that the subsection, therefore, gives them a claim.  The Court disagrees.  Section 36.303(c)(3) states that Memorial cannot meet its obligation to Robert Mansell, the disabled person, by relying on adults that accompanied Robert to Memorial unless (1) an emergency required such

use or (2) Robert Mansell specifically requested Kathy Mansell and Ken Mansell to interpret, each agreed, and the use of Kathy Mansell or Ken Mansell as an interpreter was appropriate. The section defines protections afforded Robert Mansell and Memorial's obligations to Robert Mansell. For instance, Memorial cannot satisfy Memorial's obligation to Robert Mansell by relying on an adult accompanying him to interpret for him. The section does not create new rights for non-disabled companions such as Kathy Mansell or Ken Mansell.

Kathy Mansell and Ken Mansell also rely on the Department of Justice Guidance and Section-by-Section Analysis of the 2010 amendments to the ADA regulations to support their claim that § 36.303(c)(3) creates a cause of action for them. The Department of Justice's analysis addressed the exception in § 36.303(c)(3)(ii) to the general rule that public accommodations cannot rely on adults accompanying disabled persons to interpret for disabled persons. The Justice Department emphasized that the exception only applied when both the disabled person and the adult companion freely and voluntarily agreed that the adult companion would interpret for the disable person:

> Commenters requested that the Department make clear that the public accommodation cannot request, rely on, or coerce an accompanying adult to provide effective communication for an individual with a disability, and that only a voluntary offer of

assistance is acceptable. The Department states unequivocally that consent of, and for, the accompanying adult to facilitate communication must be provided freely and voluntarily both by the individual with a disability and the accompanying adult— absent an emergency involving an imminent threat to the safety or welfare of an individual or the public. The public accommodation cannot coerce or attempt to persuade another adult to provide effective communication for the individual with a disability.

Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, Department of Justice Section-by-Section Analysis, 75 Fed. Reg. 56236, at 56283, 2010 WL 3561890, at 56283 (September 15, 2010).  Kathy Mansell and Ken Mansell argue that the Justice Department's interpretation prohibits coercion of accompanying adults to interpret.  They argue that Memorial violated that prohibition. Kathy Mansell and Ken Mansell argue that they, therefore, are persons aggrieved and are authorized to bring these claims under the RA.

The Court disagrees. The Department of Justice's quoted comment does not change the fact that § 36.303 of the ADA regulations defines the protections afforded to disabled persons.  The Justice Department analysis emphasizes that the public accommodation is obligated to provide effective communication with the disabled person.  The public accommodation cannot meet its obligation to the disabled person by using an adult companion unless the arrangement is truly voluntary.  The relationship at

issue is still the statutory obligation of the public accommodation to the disabled person and the statutory protection afforded to the disabled person.  The Court does not read the Justice Department as attempting to construe the regulation to create new rights for non-disabled accompanying adults.

Furthermore, the Department of Justice interpretation of § 36.303(c)(3) is not entitled to any deference.  Agency interpretations of a regulation are only entitled to any deference by the Courts if the regulation is genuinely ambiguous, the agency's interpretation is reasonable, and the interpretation must be an authoritative or official position of the agency. Kisor v. Wilkie, __U.S.__, 139 S.Ct. 2400, 2415-17 (2019).  In this case, § 36.303(c)(3) is quite clear:  a public accommodation may not meet its obligation to a disabled person to provide effective communication by relying on an adult companion of the disabled person unless, inter alia, the disabled person specifically asks for the arrangement and the associate consents.  The public accommodation may violate its obligation to the disabled person if it should use an adult companion to interpret if, as alleged here, the disabled person did not ask for this arrangement.  The regulation is clear; no agency interpretation is needed.

In addition, if the Justice Department actually sought to interpret the regulation to create substantive rights for accompanying adults that were not authorized by statute, that interpretation would be unreasonable as an attempt to rewrite the ADA and RA. Unreasonable agency interpretations of statutes are not entitled to deference. Kisor, 139 S.Ct. at 2415-17.

Section 36.303(c)(3) addresses the public accommodation's obligation to the disabled person not to discriminate against him or her. Section 36.303(c)(3) does not create rights or obligations with respect to non-disabled adult companions of the disabled persons such as Kathy Mansell or Ken Mansell. The principles announced in McCullum are not affected by the 2010 amendments to ADA regulations § 36.303(c)(3).

Congress created protections against discrimination against non-disabled associates of disabled persons because of their association with the disabled person. ADA 42 U.S.C. § 12182(b)(1)(E). Kathy Mansell and Ken Mansell fail to allege a violation of this section. Congress did not authorize any other claim for non-disabled associates of disabled persons. Kathy Mansell and Ken Mansell therefore lack statutory standing. They fail to state a claim. See Lexmark Int'l, Inc., 572 U.S. at 128.

THEREFORE, IT IS ORDERED that Defendant Memorial Medical Center's Motion to Dismiss Counts IV and V of Plaintiffs' Complaint (d/e 6)

is ALLOWED.  Counts IV and V are dismissed.  Plaintiffs Kathy Mansell and Ken Mansell are dismissed as parties to this case.

ENTER:   September 30, 2019


_____s/ *Tom Schanzle-Haskins*_____
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE