IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| ROBERT B. MANSELL, SR., )<br>)<br>)<br>Plaintiff, )<br>) Case No.: 3:19-cv-3130<br>v. )<br>)<br>MEMORIAL MEDICAL CENTER, )<br>)<br>Defendant. ) | |

## AMENDED COMPLAINT

Plaintiff, Robert B. Mansell, Sr., by his attorneys, Jennifer Sender and Andrés J. Gallegos of Robbins, Salomon & Patt, Ltd., for his Amended Complaint against Defendant Memorial Medical Center ("Memorial," or the "Defendant"), an Illinois not-for-profit corporation, states as follows:

### JURISDICTION AND VENUE

1.    This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the Plaintiff's claims alleged herein arise under Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794, *et seq.* and Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 U.S.C. § 18116.

2.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). All of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## THE PARTIES

3. Plaintiff, Robert B. Mansell, Sr. ("Robert"), died on October 26, 2019. He died testate. Plaintiff's Last Will and Testament nominated two co-executors of the Will. As of the filing of this Amended Complaint, Plaintiff's family has not yet been able to open the decedent's estate in the Illinois state court. When the estate is opened, the executor or executors will be appointed and, at such time, a motion to substitute the executor(s) as personal representative(s) of the Plaintiff will be filed in this case in accordance with F.R.Civ.P. 25(a).

4. Prior to his death and at all relevant times, Plaintiff was an adult who was profoundly deaf since birth. Plaintiff's primary means of communication was through American Sign Language ("ASL"). Robert had a limited ability to understand written English language, he could read and write only simple sentences in English, he had very limited ability to lip read, and he could articulate only basic words in English. He was a person with a disability within the meaning of all applicable statutes. Robert had a history of congestive heart failure and colon cancer. Robert resided in Jacksonville, Illinois.

5. In the original Complaint, Plaintiffs Kathy Mansell and Ken Mansell alleged claims under the Rehabilitation Act of 1973, 29 U.S.C. § 704. This court dismissed those claims. Those claims will not be pleaded herein. *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782 (7th Cir. 2013); *Bastian v. Petren Res. Corp.*, 892 F.2d 680, 683 (7th Cir. 1990); *Napleton's Arlington Heights Motors, Inc. v. FCA US LLC*, No. 16 C 403, 2018 WL 3370563, at *6 (N.D. Ill. July 10, 2018).

6. Memorial Medical Center is an Illinois not-for-profit corporation and is a regional acute care medical center located at 701 North 1st Street, Springfield, Illinois, which serves the

residents of 40 central and southern Illinois area. Memorial Medical Center is one of seven affiliates of the Memorial Health System.

**FACTUAL BACKGROUND**

7. The deaf community struggles with significant health disparities and is often excluded from health surveillances, outreach programs and mass media healthcare messages. Deaf users of ASL, through cultural and language barriers, are at high risk for poor health knowledge and inequitable access to medical care in our health system. These barriers directly translate to inadequate assessment, limited access to treatment, insufficient follow-up and poorer outcomes. For example, as compared with the hearing population, for the deaf population there are lower rates of individuals accessing preventative services, worse cardiovascular health outcomes and higher rates of diabetes and obesity.[1] ASL is the primary language for many people who are deaf; however, interpreters are often not provided during medical visits.

8. Memorial's denial to Plaintiff of full and equal access to its healthcare services manifests itself in several fundamental ways: (1) failure to provide appropriate auxiliary aids and services, like qualified ASL interpreters and devices, or other means to effectively communicate with patients who are deaf; (2) required family members to interpret for patients who are deaf; (3) inadequate policies and procedures to accommodate a patient's disability; and (4) failure to properly train appropriate staff on the use of video remote interpreting ("VRI") equipment. These violations deprived Plaintiff of the full and equal access to defendant's services and denied

---

[1] *See* Schoenborn, M.P.H., et al., Health Disparities Among Adults with Hearing Loss: United States, 2000 – 2006, Center for Disease Control and Prevention, Health E-Stats. Available at: http://www.cdc.gov/nchs/data/hestat/hearing00-06/hearing00-06.htm

Plaintiff the equal opportunity to participate in his healthcare, in violation of the Rehabilitation Act and Section 1557.

9. Memorial failed to implement policies, practices and procedures that meet its enhanced federal communication access mandate, which if followed would provide Plaintiff an equal opportunity to participate in its services, as required by Section 1557. 45 C.F.R. § 92.202.

10. Memorial is a public accommodation within the meaning of the Rehabilitation Act and a covered entity within the meaning of Section 1557.

11. Memorial participates in one or more Medicare and Medicaid healthcare plans with third-party payers and is a participating provider under Medicare and Medicaid. Approximately 70% of Memorial's inpatients are Medicaid and Medicare recipients; and approximately 50% of its outpatients are Medicaid and Medicare recipients. As a result thereof, Memorial is a recipient of federal financial assistance within the meaning of the Rehabilitation Act and a covered entity under Section 1557.[2]

12. Memorial failed to provide Plaintiff with auxiliary aids and services to allow him to effectively communicate with Memorial's medical and nursing staff during numerous vital encounters in connection with Robert's hospitalization and testing in November of 2018 and his hospitalization in August of 2019, which did not allow him to participate in his own care. Further, Memorial improperly relied on plaintiff's ex-wife, Kathy Mansell, and his brother, Ken

---

[2] Illinois Hospital Report Card and Consumer Guide to Healthcare, Illinois Department of Public Health. Available at: http://www.healthcarereportcard.illinois.gov/hospitals/view/101160 (52.5% of all inpatients at Memorial Medical Center are Medicare recipients, and 17.7% of its inpatients are Medicaid recipients; 28.91% of all of its outpatients are Medicare recipients, and 21.08% of its outpatients are Medicaid recipients).

4

Mansell, to facilitate communication between physicians and nurses and Plaintiff during numerous vital encounters in connection with medical services that he received at Memorial. By failing to provide auxiliary aids and services, Memorial jeopardized Plaintiff's health and well-being.

13.     On November 24, 2018, at approximately 2:20 a.m., Plaintiff, who has a history of congestive heart failure, and was being treated for colon cancer, anxiety and depression, drove himself to Passavant Hospital in Jacksonville because he was experiencing severe chest pains. After conducting testing, due to his continued complaints, the doctors at Passavant Hospital transferred Plaintiff via ambulance to Memorial to be treated by a cardiology specialist. At Passavant Hospital, Plaintiff was provided with an on-site ASL interpreter to assist with communication. Prior to the transfer, Plaintiff asked a doctor at Passavant Hospital to contact Memorial to request an on-site ASL interpreter, which was done.

14.     At approximately 6:43 a.m. on November 24, 2018, Plaintiff was transferred to Memorial and remained hospitalized there until his discharge on November 26, 2018.

15.     When Plaintiff arrived at Memorial, there was no on-site, live ASL interpreter. He immediately requested paper and pen and wrote that he needed an interpreter. The nurse brought in VRI equipment, but she apparently did not know how to operate the equipment. The VRI equipment in his examination room remained unused.

16.     Plaintiff's preferred method of communication, ASL, was recorded in his Memorial medical records by a Social Services nurse on November 24, 2018 at approximately 11:03 a.m.

17. At approximately 9:30 a.m. on November 24, 2018, Kathy arrived at Memorial. She immediately asked the staff if Plaintiff would be provided an on-site interpreter, and she was informed that Memorial does not provide on-site interpreting. Despite the absence of an emergency involving an imminent threat to the safety or welfare of Plaintiff or the public, and despite Plaintiff not requesting that Kathy interpret for him, the staff then asked Kathy to interpret for Plaintiff. Reluctantly, Kathy agreed to interpret, but she stressed to the staff that a licensed, qualified interpreter was needed and that she was not a licensed, qualified interpreter and did not have knowledge of medical terminology or signs for medical terminology.

18. Plaintiff underwent a series of tests, including a chest x-ray, an electrocardiogram, an echocardiogram, and a Lexiscan nuclear stress test. Kathy was forced to interpret for Plaintiff, as he had no other means to communicate with doctors, nurses and staff during these tests. The test results revealed that Plaintiff had atrial fibrillation with rapid ventricle rate.

19. Plaintiff was identified as a fall risk and was instructed that he could not get out of his bed by himself.

20. When Plaintiff returned to his hospital room, Kathy repeatedly informed Memorial's nurses and staff that he was deaf and needed an interpreter. Despite these repeated requests, the doctors and nurses continued to talk to Plaintiff without regard to his ability to understand them. In fact, the nurses provided verbal instructions to Plaintiff on the use of the non-deaf friendly call button and non-deaf friendly telephone to order his food. Even though Kathy reminded the nurse that Plaintiff could not use the call button or telephone, the nurse reminded him to use them when she left the room.

21.     During the day of November 24, while Kathy was with Plaintiff, she used the call button for him to request assistance with the restroom. Because there was a significant delay in the staff's response to the call, Kathy had to assist Plaintiff in ambulating to the restroom.

22.     That day, Kathy had to leave around 3:00 p.m. Plaintiff had no means to communicate with doctors and nursing staff and no means to use the call button the remainder of that day or night. Plaintiff's son-in-law called Memorial to advise them that Plaintiff was deaf and needed an interpreter. None was provided.

23.     The next morning, November 25, 2018, Plaintiff's brother, Ken, arrived at the hospital and stayed with him until his discharge on November 26, 2018. On his arrival, Ken asked Memorial staff regarding the status of the on-site interpreter. He was told that they only had VRI. When the nurses attempted to use the VRI, it still would not work. Because there was no other means for Plaintiff to communicate with the doctors, nurses, and staff, Ken was forced to attempt to interpret. Ken explained to the staff that he only knew the basics of ASL and was not fluent or certified.

24.     On November 25, 2018, Plaintiff underwent a series of tests with the cardiology and other departments, including a two-day nuclear stress test. Ken offered to accompany Plaintiff to assist with communication, but staff told him it was not needed. Upon return from testing, Plaintiff was distressed, upset, and crying, because he had no way to communicate during the tests. Plaintiff was also presented with cardiac education information, covering such topics as action plan for symptoms, activity restrictions, chest pain/emergency management, daily weight, medication pre-administration procedures and other critically vital topics, none of

7

which he was able to understand. That information was provided to him without the benefit of a sign language interpreter.

25. On the morning of November 26, 2018, Plaintiff underwent additional testing, and the cardiologist came in to speak with him. The doctor refused to attempt to utilize the VRI; instead, he spoke at length with Ken regarding the results of the tests and Plaintiff's condition. With his limited knowledge of ASL, Ken tried to communicate to Plaintiff the conversation with the cardiologist.

26. At approximately 4:30 p.m. on November 26, 2018, Plaintiff was discharged from Memorial. No interpreter was provided for Plaintiff's discharge conference, during which critical information was presented in writing to him about his diagnosis, cardiac education, the role of physical and occupational therapy, and importance of a cardiac follow-up upon discharge. Plaintiff did not understand the information presented. After four days in the hospital and numerous tests, he still did not know the cause of his chest pains. The inability to engage in free flow communication, to ask his questions and have them answered, to understand treatment options and plans, to understand preventative steps, and to provide informed consent caused Plaintiff significant emotional distress, humiliation, anxiety and added to his depression.

27. After this lawsuit was filed, on August 23, 2019, Plaintiff again presented to Defendant's emergency room and was admitted for inpatient care due to hydronephrosis. Once arriving at the hospital, he used pen and paper to advise the Defendant's staff that he was deaf and to request an on-site ASL interpreter. No on-site interpreter was provided.

28. Plaintiff was admitted for care and was discharged on August 26, 2019. During the entire stay, despite repeated requests, Defendant refused to provide an on-site ASL

interpreter. On two occasions, Ken was able to locate a qualified ASL interpreter to come to the hospital to assist with interpretation. On each occasion, the interpreter was only able to stay for a limited time.

29.     For the majority of the hospitalization when the on-site interpreters were not present, Defendant's employees made repeated attempts to use VRI equipment, but the VRI still would not work. The VRI image would freeze each time it was attempted to be used.  Because of the delays caused by them trying to set up the VRI and/or achieve an operational connection, doctors treating Plaintiff would generally not wait for the VRI and either use notes to communicate or communicate directly with Ken or Kathy, leaving them to interpret the conversations to Plaintiff.

30.     When interpreters were not provided by Ken, there were no other means for Plaintiff to communicate with the doctors, nurses, and staff.  Accordingly, Ken and Kathy were again forced to alternate staying with Plaintiff to attempt to interpret, despite their limited abilities to interpret. Plaintiff never made a request to Defendant to allow him to use family members as interpreters.

## COUNT I

### Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 704

1-30. Plaintiff incorporates by reference the paragraphs 1 through 30.

31.     At all relevant times herein, Defendant received federal financial assistance in the form of reimbursement from the federal Medicare and Medicaid programs and is therefore subject to the anti-discrimination provisions of the Rehabilitation Act, as herein described.

32. At all times relevant herein, there was in full force and effect a statute known as the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et sequitur*, and its implementing regulations, 45 C.F.R. § 84.4(a). The Section 504 implementing regulation provides that "[n]o qualified handicapped person shall, on the basis of handicap be excluded from participation in, be denied the benefits of or otherwise be subjected to discrimination under any program or activity which receives or benefits from Federal financial assistance." 45 C.F.R. § 84.4(a).

    A.    The regulation further provides:

> "A recipient, in providing any aid, benefit, or service, may not, ... on the basis of handicap: (ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit or service that is not equal to that afforded others ..."
>
> 45 C.F.R. § 84.4(b)(1) (ii).

    B.    Elsewhere, the Section 504 regulation states:

> "In providing health, welfare or other social services or benefits, a recipient may not on the basis of handicap: … (2) Afford a qualified handicapped person an opportunity to receive benefits or services that is not equal to that offered non-handicapped persons.
>
> 45 C.F.R. § 84.52(a)(2).

    C.    In addition, "[a] recipient hospital that provides health services or benefits shall establish a procedure for effective communication with persons with impaired hearing for the purpose of providing emergency health care." 45 C.F.R. § 84.52(c).

    D.    The regulation further provides:

> "A recipient to which the subject applies that employs 15 or more persons shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question."

10

45 C.F.R. § 84.52(d)(l).

E.  The regulation provides that such "auxiliary aids may include interpreters… and other aids for persons with impaired hearing… 45 C.F.R. § 84.52(d)(3).

F.  The Section 504 regulation defines a person who has a disability as any person who:

> "(i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."

45 C.F.R. § 84.3(j)(l)(i)-(iii).

G.  A qualified person with a disability, with respect to the provision of health, welfare and social services, is a person "who meets the essential eligibility requirements for the receipt of such services." 45 C.F.R. § 84.3(k)(4).

33.  Through the acts and omissions alleged herein, Memorial has, solely on the basis of Plaintiff's disability, excluded Plaintiff from participating in its services, denied Plaintiff the benefit of its services, denied Plaintiff the opportunity to participate in his healthcare, and subjected Plaintiff to discrimination in violation of 29 U.S.C. § 794. *et seq.*, and the regulations promulgated thereunder, and have resulted in injury to Plaintiff.

34.  At all relevant times herein, Memorial knew that Plaintiff had federally protected rights to effective communication, and Defendant's acts and omissions alleged herein violated the Rehabilitation Act and its implementing regulations by one or more or all of the following manners as defendant has discriminated against Plaintiff by:

  A. Denying him the opportunity for the full and equal enjoyment of the services, privileges, advantages, or accommodations of the facilities owned, operated and/or contracted for use by Defendant.

  B. Denying him the opportunity to participate in or benefit from the services, facilities, privileges, advantages, or accommodations of Defendant's facilities.

  C. Offering or affording him services that are not equal to those services afforded to other individuals without hearing impairments.

  D. Failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford its services to Plaintiff where such modifications would not fundamentally alter the nature of its services.

  E. Failing to establish a procedure for effective communication with Plaintiff for the purpose of providing health care.

  F. Acting intentionally and with deliberate indifference in failing to provide Plaintiff appropriate auxiliary aids and services, such as an on-site sign language interpreter or effective video remote interpreting services, where the taking of such steps would not fundamentally alter the nature of its offered services or would not result in undue burden.

  G. Defendant has otherwise discriminated against Plaintiff.

35. Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

36. As a proximate result of Defendant's violations of Section 504, Memorial has inflicted injury and damages upon the Plaintiff, including loss of a civil right, mental anguish, humiliation, and mental pain and suffering.

37. Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794(a), as Defendant's conduct has inflicted injury

and damages upon Plaintiff, including loss of a civil right, mental anguish, and mental pain and suffering.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert B. Mansell, Sr. prays for the following relief:

A. A declaration that Defendant operated its facility in a manner which discriminated against the Plaintiff and that Defendant failed to provide communication access to the Plaintiff as required by law;

B. An award of compensatory monetary damages;

C. An award of attorneys' fees and costs; and

D. Such other relief as the Court deems just.

## COUNT II

### Violation of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116

1-30. Plaintiff incorporates by reference the paragraphs 1 through 30.

31. Since March 2010, there was in full force and effect a statute known as the Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, *et seq.*, Pulp. 111-148. Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective as of July 18, 2016, apply to health programs or activities administered by recipients of Federal financial assistance from the Department of Health and Human Services.

32. As Defendant participates in Medicare and Medicaid, it is a covered entity subject to compliance with Section 1557.

13

33. The implementing regulations of Section 1557 prohibit discrimination of an individual on the basis of disability, *inter alia*, and prohibit an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. *See* 45 C.F.R. § 92.101(a)(1). Those regulations, in pertinent part, require covered entities to:

    A. Take appropriate initial and continuing steps to notify beneficiaries, enrollees, applicants and members of the public:

(1) that the covered entity does not discriminate on the basis of race, color, national origin, sex, age, or disability in its healthcare programs or activities. 45 C.F.R. §92.8 (a)(1);

(2) that the covered entity provides appropriate auxiliary aids and services, including qualified interpreters for individuals with disabilities and information in alternate formats, free of charge and in a timely manner, when such aids and services are necessary to ensure an equal opportunity to participate to individuals with disabilities. 45 C.F.R. §92.8 (a)(2);

(3) how to obtain aids and services. 45 C.F.R. §92.8 (a)(4);

(4) the identification of, and contact information for, the responsible employee designated to be responsible for adoption of grievance procedures. 45 C.F.R. §92.8 (a)(5);

(5) the availability of grievance procedures and how to file a grievance pursuant to §92.7(b). 45 C.F.R. §92.8 (a)(6); and

(6) how to file a discrimination complaint with the Department of Health and Human Services Office of Civil Rights. 45 C.F.R. §92.8 (a)(7).

    B. That a covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in accordance with the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

28 C.F.R. §§ 35.160 through 35.164 are the communication access standards required of public entities under Title II of the ADA. Where those regulatory provisions use the term "public entity," the term "covered entity" shall apply in its place. *See* 45 C.F.R. § 92.202(a). As applied

to Section 1557 covered entities, the Title II regulations require them to "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). In addition, a covered entity "shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, … companions, … an equal opportunity to participate in, and enjoy the benefits of, a service, program or activity of a [covered] entity," 28 C.F.R. § 35.160(b)(1); and "[i]n determining what types of auxiliary aids and services are necessary, a [covered] entity shall give *primary consideration* to the requests of individuals with disabilities …." 28 C.F.R. § 35.160(b)(2) (emphasis added).

34. Defendant had a duty under Section 1557 to give primary consideration to Plaintiff's communication preference and provide them with an ASL interpreter, either on-site or via effective VRI.

35. Defendant's acts and omissions violated Section 1557 and its implementing regulations as Defendant did not take appropriate steps to ensure that communications with Plaintiff were as effective as communications with others in its healthcare services, and Defendant failed to meet its obligations under Section 1557 and the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

36. Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by this part, and "compensatory damages for violations of Section 1557 are

available in appropriate administrative and judicial actions brought under this rule." *See* 45 C.F.R. § 92.301.

37. Defendant's conduct constituted violations of Section 1557.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert B. Mansell, Sr. prays for the following relief:

A    A declaration that Defendant operated its facility in a manner which discriminated against the Plaintiff and that Defendant failed to provide communication access to the Plaintiff as required by law;

B.    An award of compensatory monetary damages;

C.    An award of attorneys' fees and costs; and

D.    Such other relief as the Court deems just.

**Plaintiff Demands Trial by Jury.**

                                      Robert B. Mansell, Sr., Plaintiff.

                                      /s/     Jennifer M. Sender

                                      One of His Attorneys

Jennifer M. Sender (ARDC No. 6207774)
Andrés J. Gallegos (ARDC No. 6212168)
Attorneys for Plaintiffs
ROBBINS, SALOMON & PATT, LTD.
180 N. LaSalle Street, Suite 3300
Chicago, Illinois 60601
(312) 782-9000 - Telephone
(312) 782-6690 - Facsimile
jsender@rsplaw.com
agallegos@rsplaw.com